**S. AMANDA MARSHALL,** OSB #95347
United States Attorney
District of Oregon
**KEMP L. STRICKLAND,** OSB #96118
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
kemp.strickland@usdoj.gov
        Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No.:  **11-CR-00198-MO** |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **TOMIKO MONIQUE AYTCH,** | |
| Defendant. | Sentencing Date: **November 4, 2011 at 10:30 a.m.** |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, and Kemp L. Strickland, Assistant United States Attorney, respectfully submits the Government's Sentencing Memorandum for the Court's consideration.  Except as noted in this memorandum, the government agrees with the factual findings, guideline applications, and recommendations as set forth in the Pre-Sentence Report (PSR).  Further, as part of its recommendation, the government considered mitigation materials recently provided by defendant's attorney, Stephen Sherlag.

**Page 1 - GOVERNMENT'S SENTENCING MEMORANDUM**
        *United States v. Tomiko Monique Aytch,* 11-CR-198-MO

I.     CONSIDERATION OF THE SECTION 3553 FACTORS AFTER *BOOKER*

   A.     The Sentencing Guidelines After *Booker*

Under the Sentencing Reform Act as modified by *United States v. Booker*, 543 U.S. 220 (2005), this Court must analyze and consider the Guideline factors before imposing sentences in federal criminal cases. 543 U.S. at 259, 261 (noting that Sentencing Reform Act "nonetheless requires judges to take account of the Guidelines together with other sentencing goals"); *see also United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (noting that the "[c]ontinuing duty of district courts to consult the Guidelines is statutory.")  The Sentencing "Commission developed Guidelines sentences using an empirical approach based on data about past sentencing practices, including 10,000 presentence investigation reports." *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 567 (2007), citing USSG § 1A1.1, intro. comment., Pt. A, ¶ 3.  "The [Sentencing] Commission 'modif[ied] and adjust[ed] past practice in the interest of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'"  *Kimbrough*, 128 S. Ct. at 567, citing *Rita v. United States,* 551 U.S. 338, 127 S. Ct. 2456, 2464 (2007); *see also United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007) (stating that the Sentencing Guidelines were ". . . drafted by a respected public body with access to the best knowledge and practices of penology").  The Third Circuit in *United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2007), has also spoken to the origin and continued importance of the advisory guidelines:

> The Sentencing Guidelines are based on the United States
> Sentencing Commission's in-depth research into prior
> sentences, presentence investigations, probation and parole
> office statistics, and other data. More importantly, the
> Guidelines reflect Congress's determination of potential
> punishments, as set forth in statutes, and Congress's on-going
> approval of Guidelines sentencing, through oversight of the
> Guidelines revision process. Because the Guidelines reflect
> the collected wisdom of various institutions, they deserve
> careful consideration in each case. Because they have been
> produced at Congress's direction, they cannot be ignored.

(citations omitted).

In *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) (en banc), the Ninth Circuit declined to adopt a presumption of reasonableness for appellate review of within-Guideline sentences, but it stated that "normally" a Guideline sentence will not be found unreasonable on appeal. 520 F.3d at 988. *Carty* also provided a detailed framework for federal sentencing. This Court must begin by determining the applicable guideline range - this range is a "starting point" and "initial benchmark." *Carty*, 520 F.3d at 991. This Court must then ensure that the parties have an opportunity to argue for the sentence that they believe is appropriate. *Id.* This Court must also consider Section 3553(a) in conjunction with these arguments. *Id.* This Court cannot presume that a Guideline sentence is reasonable and cannot give the Guidelines more or less weight than the other 3553(a) factors. *Id.* The sentencing must be an "individualized" determination. *Id.* Importantly, in deciding the extent of any proposed departure or variance from the Guideline range, this Court must consider whether the justification is sufficiently compelling to support the degree of the variance. *Id.* The greater the variance, the more

**Page 3 - GOVERNMENT'S SENTENCING MEMORANDUM**
   *United States v. Tomiko Monique Aytch,* 11-CR-198-MO

persuasive the justification should be "because other values reflected in Section 3553(a) - such as, for example, unwarranted disparity" counsel against the variance. *Id.* at 991-92. Also importantly, this Court must provide enough of an explanation to enable meaningful appellate review, and this will vary depending upon the complexity of the case. *Id.* at 992.

      **B.**    **Consideration of the 3553(a) Factors**

The applicable Sentencing Guidelines range, while not definitive, provides the starting point for finding a reasonable sentence and must then be considered with the factors set forth in Section 3553(a). *See Cantrell*, 433 F.3d at 1279; *see also Rita*, 551 U.S. 338, 127 S.Ct. at 2464 (stating ". . . it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.") "To comply with the requirements of *Booker*, the district court must have sufficiently considered the Guidelines as well as the other factors listed in § 3553(a). This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court consider the statutorily-designated factors in imposing a sentence." *United States v. Nichols*, 464 F.3d 1117, 1125 (9th Cir. 2006), quoting *United States v. Knows His Gun*, 438 F.3d 913, 918 (9th Cir. 2006).

      **1.**    **Nature and Circumstances of the Offense and History and Characteristics of Defendant**

As detailed in the PSR's of Aytch and co-defendants Jackson, Johnson, and Miles, the transportation and exploitation of a AK, a 15-year old child was extensive and involved a high level of violence to the child through beatings and rapes. While Aytch

**Page 4 - GOVERNMENT'S SENTENCING MEMORANDUM**
    *United States v. Tomiko Monique Aytch,* 11-CR-198-MO

may not have known specific instances and/or the nature and level of violence inflicted upon AK by Jackson, she resided just a few doors down at America's Best Value Inn and other hotels Jackson harbored AK.  She was aware that Jackson was a violent pimp and described him as a "Cold Gorilla" with a "Napoleon's Complex" to FBI agents.  Aytch, as a former prostitute, was also aware of the level of violence and rape a child could suffer working as a prostitute.  Further, Aytch was aware of AK's youth.  Jackson wanted Aytch to teach AK about feminine hygiene and how to be a lady.  Aytch also told agents she was uncomfortable around AK and Jackson because, "she looked like she was 12-years old".

Early on, Aytch agreed to cooperate and proffer with the government after providing a statement to agents on August 31, 2009.  She cooperated fully and debriefed with agents and the government on multiple occasions.  For her cooperation, the government agrees to reductions in her sentence pursuant to USSG 5K and 3B1.2(a).  According to Aytch, she did not benefit financially from posting AK on line and she helped Jackson commit this crime because Jackson and Johnson were partners and her friends.  However, there some indication by Johnson in his proffer that Aytch may have benefitted indirectly from sales of cocaine to Jackson.

### 2. Need to Reflect the Seriousness of the Offense

Congress has spoken by its establishment of life sentences for sex trafficking crimes.  Enslaving another human being is now one of the most serious federal offenses that can be committed.  The increasingly more serious USSG offense levels and

enhancements for sex trafficking demonstrates a recognition for the seriousness of offenses that take away the very basic freedoms that Americans believe are essential to their "pursuit of happiness."

### 3.     Deterrence of Criminal Conduct

Aytch's criminal history does not indicate that she is a violent offender. However, it demonstrates consistent criminal conduct over time and problems during supervision. *See* PSR ¶¶ 42-55. A sentence of six months of imprisonment and six months of work release would have a specific and general deterrent effect on her and other women who have a similar role while trafficking a minor

### 4.     Need to Avoid Unwarranted Disparity in Sentences

A sentence of six months custody followed by six months of work release properly accounts for "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Numerous courts have recognized that the guidelines range serves as a bulwark against sentencing disparity. *See United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006) (recognizing that guidelines "help to maintain uniformity in sentencing throughout the country"); *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006) ("The Guidelines . . . are an indispensable tool in helping courts achieve Congress's mandate to consider 'the need to avoid unwarranted sentence disparities' among similarly situated defendants") (quoting 18 U.S.C. § 3553(a)(6)); *United States v. Smith*, 445 F.3d

1, 7 (1st Cir. 2006) (noting that "the guideline range . . . is the principal means of complying with" the goal of avoiding unwarranted sentencing disparity).

18 U.S.C. § 3553(a)(6) "requires courts to consider sentencing disparities between similarly situated federal defendants," and "does not require district courts to consider sentencing disparities between defendants found guilty of similar conduct in state and federal courts." *United States v. Ringgold*, 571 F.3d 948, 951 (9th Cir. 2009). Therefore, the Ninth Circuit has stated that "a district court judge does not abuse his discretion in declining to consider under § 3553(a)(6) the sentence a defendant would have received for the same conduct in state court." *Id.* at 952.

Aytch's role in this case is by far less culpable than Jackson or Johnson. However, her conduct appears to be more than Miles who also cooperated fully with the government and received a probationary sentence. It is well documented that Miles was Johnson's prostitute and operated under the direction of Johnson - a violent career offender who had consistently beat her over a lengthy period. At Johnson's orders, she posted commercial sex advertisements of AK online on three occasions within a few days of meeting AK. In that time period, Johnson required that Miles coach AK on how to work and conduct herself as a prostitute. From August 25, 2008 through September 8, 2008, Aytch resided at the same hotel as Jackson and AK and saw her on a regular basis. At Jackson's request, she used her laptop to post at least seven commercial sex advertisements of AK online through Craigslist.com. The ads contained the cellular

phone number and photographs of AK.  There is no evidence that Aytch was coerced by Jackson or Johnson in any way.

Here, Miles' criminal history involved prostitution-related offenses where she was a victim of Johnson or some other pimp/trafficker in the past.  Aytch's criminal history goes back to age 12.  The majority of the offenses involve deceptive crimes.  In addition to Miles' culpability being lower than Aytch's, her success on pre-trial supervision was remarkable.  Miles completely changed every aspect of her life and developed a supportive relationship with her daughter.  She completed every program available to her and is attending college and scoring well.  She successfully completed every aspect of pre-trial release with no positive urinalysis tests.  Miles worked hard to be a mentor and group leader for other female prostitutes at Lifeworks Northwest.  On pre-trial release, Aytch found and has maintained a full time job since July of this year.  However, her success is measured and she struggle with her addition to cocaine.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Page 8 - GOVERNMENT'S SENTENCING MEMORANDUM**
          *United States v. Tomiko Monique Aytch,* 11-CR-198-MO

## II.  CONCLUSION

For the reasons set forth above, including consideration of the advisory sentencing guideline range and Section 3553(a) factors, the government respectfully requests that the Court follow the recommendation in the PSR.

DATED this 28th day of October, 2011.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney
District of Oregon

/s/ *Kemp L. Strickland*
KEMP L. STRICKLAND, OSB #96118
Assistant United States Attorney